CHAVEZ & GERTLER, LLP
Mark A. Chavez (SBN 90858)
Jonathan Gertler (SBN 111531)
Nance F. Becker (SBN 99292)
42 Miller Avenue
Mill Valley, California 94941
Telephone: (415) 381-5599
Facsimile: (415) 381-5572
mark@chavezgertler.com
jon@chavezgertler.com
nance@chavezgertler.com

[*Additional counsel appear on signature page*]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARA Y. BURNS; RODOLFO SANCHEZ and M. CARMEN SANCHEZ, <br><br> Plaintiffs, <br><br> v. <br><br> WASHINGTON MUTUAL BANK, <br><br> Defendant. | No. CV 08 0919 <br><br> CLASS ACTION <br> CLASS ACTION COMPLAINT FOR: <br><br> 1. Violations of the Equal Credit Opportunity Act; and <br><br> 2. Violations of the Fair Housing Act. <br><br> DEMAND FOR JURY TRIAL |

1.     Plaintiffs Mara Y. Burns, Rodolfo Sanchez and M. Carmen Sanchez (collectively, "Plaintiffs"), by and through their attorneys, bring this action against Washington Mutual Bank ("Defendant WMB" or "WMB"), seeking redress for racially discriminatory lending practices under the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. ("ECOA") and the Fair Housing Act, 42 U.S.C. § 3601 et seq ("FHA").

CLASS ACTION COMPLAINT

## INTRODUCTION

2.     This class action challenges Defendant WMB's racially discriminatory mortgage lending practices.  As described below, Defendant WMB, when doing business under each and all of its business names and trade names as defined and described herein, established a specific, identifiable and uniform credit pricing system, a component of which, referred to herein as the "Discretionary Pricing Policy," authorized an unchecked, subjective surcharge of additional points and fees to an otherwise objective risk-based financing rate.

3.     These subjective, additional finance charges directly lead to minorities receiving home loans with higher interest rates and higher fees and costs than similarly situated non-minority borrowers.

4.     As used in this Complaint, "minority" or "minorities" shall refer to all non-Caucasians and other minority racial groups protected under 42 U.S.C. § 3604 and 15 U.S.C. § 1691.

5.     Plaintiffs bring this action on behalf of all minorities who have entered into residential mortgage loan contracts that were originated, financed or purchased by Defendant WMB, and who have been subjected to racial discrimination (the "Class").

6.     Plaintiffs seek injunctive, declaratory, and equitable relief, punitive damages, and other monetary and non-monetary remedies for Defendant WMB's racially discriminatory conduct.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, which gives this Court original jurisdiction over civil actions arising under federal law.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' and the Class's claims occurred in this District.  Plaintiff Mara Y. Burns resides in this District and Defendant WMB financed Plaintiff Burns's purchase of property located in this

CLASS ACTION COMPLAINT

District. Defendant WMB's contacts to this District are sufficient to subject the company to personal jurisdiction in this District as it maintains business offices in this District; it is currently a member of the San Francisco regional branch of the Federal Home Loan Bank ("FHLB") system; and through offices located in this District has originated many residential mortgage loans in this District secured by properties located in this District.

**PARTIES**

9.      Plaintiff Mara Y. Burns ("Plaintiff Burns" or "Burns") is an African-American homeowner who resides in Oakland, California 94607.

10.      Plaintiffs Rodolfo Sanchez and M. Carmen Sanchez (together, the "Sanchez Plaintiffs") are Hispanic homeowners who reside in Lawndale, California 90260.

11.      Defendant WMB is a federally chartered savings association whose principal place of business is in Seattle, Washington. Defendant WMB is a wholly owned subsidiary of Washington Mutual, Inc. ("WM"), a holding company whose common stock trades on the New York Stock Exchange. As noted in WM's recent filings with the Securities and Exchange Commission ("SEC"), Defendant WMB is doing business under one or more of the following business names or trade names: Washington Mutual Bank; Washington Mutual Bank, FA; and Long Beach Mortgage Company or Long Beach Mortgage.

**FACTS**

**I.     HISTORICAL DISCRIMINATION IN AMERICAN MORTGAGE LENDING: A LONG LEGACY**

12.      Racial discrimination in America's mortgage lending industry has a long legacy. As this Complaint attests, that unfortunate history continues to this day due to discriminatory treatment of minority borrowers by mortgage lenders such as Defendant WMB.

13.    According to the Joint Center for Housing Studies at Harvard University's 2005 study called "The Dual Mortgage Market: The Persistence of Discrimination in Mortgage Lending," "[i]n the immediate post-World War II period, racial discrimination in mortgage lending was easy to spot. From government-sponsored racial covenants in the Federal Housing Administration (FHA) guidelines to the redlining practices of private mortgage lenders and financial institutions, minorities were denied access to home mortgages in ways that severely limited their ability to purchase a home.  Today, mortgage lending discrimination is more subtle. . . . [M]ore than three decades after the enactment of national fair lending legislation, minority consumers continue to have less-than-equal access to loans at the best prices and on the best terms that their credit history, income, and other individual financial considerations merit."

14.    The passage of civil rights legislation and fair lending laws in the 1960s and 1970s brought an end to the most virulent forms of overt racial discrimination in the housing markets, but throughout the 1980s and 1990s, mortgage lenders found more subtle ways to discriminate, including maintaining offices only in Caucasian neighborhoods and engaging in practices such as redlining (refusing to lend on properties in predominantly minority neighborhoods).

15.    After redlining practices were challenged in the 1990s, mortgage lenders changed tactics once again.  Lenders began making loans to minorities, but charged them higher interest rates and loan-related fees than they charged to similarly-situated Caucasian borrowers.  Loan data that mortgage lenders must now compile under the federal Home Mortgage Disclosure Act ("HMDA") reveals profound loan pricing disparities between minority borrowers and similarly-situated Caucasian borrowers.

16.    The HMDA requires mortgage lenders to report information about the home loans they process each year.  In 2005, lenders reported information on more

CLASS ACTION COMPLAINT

1    than 30 million home loan applications pursuant to HMDA.  In 1989, Congress

2    required lenders to begin disclosing information about mortgage borrowers' race

3    and ethnicity.  In 2004, concerned with potential racial discrimination in loan

4    pricing, and recognizing that racial or other types of discrimination can occur when

5    loan officers and mortgage brokers have latitude in setting interest rates, the

6    Federal Reserve Board began requiring lenders to also report information

7    concerning rates, points, and fees, charged to borrowers on high-cost loans.

8        17.    According to the Federal Reserve, both 2004 and 2005 HMDA data

9    revealed that "Blacks and Hispanics were more likely . . . to have received higher-

10   priced loans than non-Hispanic whites. . . . [which has] increased concern about the

11   fairness of the lending process."  Robert B. Avery, Kenneth P. Brevoort and Glenn

12   B. Canner, "Higher-Priced Home Lending and the 2005 HMDA Data," Federal

13   Reserve Bulletin, A124, A159 (revised Sept. 18, 2006)

14   (http://www.federalreserve.gov/pubs/bulletin/2006/hmda/bull06hmda.pdf (last

15   viewed February 11, 2008).)

16       18.    HMDA data for 2004 reveals profound loan pricing disparities

17   between Hispanic borrowers and non-Hispanic whites even after controlling for

18   borrowers' gender, income, property location, and loan amount.  After accounting

19   for those differences in the 2004 HMDA data, Hispanic borrowers were still almost

20   twice as likely to receive a higher-rate home loan as non-Hispanic whites.

21   (http://www.responsiblelending.org/pdfs/Testimony-Ernst061306.pdf (last viewed

22   February 11, 2008).)  In a speech last year, the Vice-Chairman of the Federal

23   Deposit Insurance Corporation, Martin Gruenberg, discussed the 2004 HMDA data

24   and observed that that data "clearly indicated" that Hispanics are more likely to

25   receive high-cost home loans than are non-Hispanic whites.

26   (http://www.fdic.gov/news/news/speeches/archives/2006/chairman/spoct1806.html

27   (last viewed February 11, 2008).)

28

**CLASS ACTION COMPLAINT**

19.    Likewise, HMDA data for 2005 shows that "for conventional home-purchase loans, the gross mean incidence of higher-priced lending was 54.7 percent for blacks and 17.2 percent for non-Hispanic whites, a difference of 37.5 percentage points."  Avery, Brevoort, and Canner, Federal Reserve Bulletin, at A159.  The situation is similar for refinancings, where there is a difference of 28.3 percentage points between blacks and non-Hispanic whites.  Id. at A124, A159.

20.    A growing number of research studies and investigations show that significant racial disparities still exist.  Association of Community Organizations for Reform Now (ACORN), "The High Cost of Credit: Disparities in High-priced Refinanced Loans to Minority Homeowners in 125 American Cities" (September 27, 2005) ("[i]n every metropolitan area where at least 50 refinances were made to African-American homeowners, African-Americans were more likely to receive a high-cost loan than White homeowners") (http://acorn.org/uploads/media/High_Cost_of_Credit_Report_02.doc (last viewed on February 11, 2008); Ross, "The Continuing Practice and Impact of Discrimination" (Revised July 2006) (Univ. of Connecticut, Working Paper 2005-19R) (http://www.econ.uconn.edu/working/2005-19r.pdf) (last viewed February 11, 2008).

21.    The aggregate HMDA data discussed above is representative of Defendant WMB.  According to WM's Form 10-K for year end 2006 filed with the SEC, the company is "one of the nation's largest lenders."

22.    Moreover, specific analyses of the available HMDA data have revealed that minority borrowers are much more likely to receive high-cost loans from Defendant WMB than are Caucasian borrowers.  A March 2007 study by the California Reinvestment Coalition, et al., entitled "Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending" (http://www.nedap.org/pressroom/documents/2007_Report-2005_HMDA.pdf (last viewed February 11, 2008), revealed that based on HMDA data, African-

CLASS ACTION COMPLAINT

1   Americans in six metropolitan areas (in alphabetical order, Boston, Charlotte,

2   Chicago, Los Angeles, New York and Rochester, NY) who borrowed from

3   Defendant WMB in 2005 were four times more likely than Caucasian borrowers to

4   have received a high-cost home purchase loan.   The study also showed that

5   Hispanic borrowers in these metropolitan areas who borrowed from Defendant

6   WMB were three and a half times more likely than Caucasian borrowers to have

7   received a high-cost home purchase loan.

8       23.     Importantly, consistent with the consensus that the HMDA data

9   reveals profound loan pricing disparities between minorities and Caucasians even

10  after controlling for income and other objective factors, research studies have also

11  generally suggested that borrowers' credit profiles cannot fully explain why some

12  borrowers, and not others, are saddled with higher cost loans.

13      24.     As an example, research by Howell Jackson of Harvard Law School,

14  detailed in the article *Kickbacks or Compensation: The Case of Yield Spread*

15  *Premiums* (Harvard Univ.), H. Jackson and J. Berry, available at

16  (http://www.law.harvard.edu/faculty/hjackson/pdfs/january_draft.pdf) (last viewed

17  February 12, 2008), concluded that the substantially higher mortgage broker

18  compensation received as the result of yield spread premiums could not be fully

19  explained when controlling for variables associated with creditworthiness.

20      25.     In short, a number of researchers have raised "doubts that risk can

21  adequately explain racial differences" in high-cost loans.  Bradford, Center for

22  Community Change, "Risk or Race? Racial Disparities and the Subprime

23  Refinance Market" (May 2002)

24  (http://www.knowledgeplex.org/kp/report/report/relfiles/ccc_0729_risk.pdf) (last

25  viewed February 11, 2008).  In other words, evidence "suggests that weak

26  borrower credit profiles do not fully explain why some borrowers get stuck with

27  higher-cost home loans."  California Reinvestment Coalition, et al., "Paying More

28

**CLASS ACTION COMPLAINT**

for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending" (March 2007).

## II.    PAST AS PROLOGUE: DEFENDANT WMB'S DISCRIMINATORY LENDING POLICY

### A.    DEFENDANT WMB'S RELATIONSHIPS WITH ITS MORTGAGE BROKERS AND CORRESPONDENT LENDERS

26.    Defendant WMB is among America's leading mortgage lenders, originating and funding mortgage loans through loan officers, through authorized mortgage brokers and through a network of correspondent lenders.

27.    According to WM's Form 10-K filed with the SEC for the year ended December 31, 2006, its Home Loans Group, of which Defendant WMB is a vital part, "offers a wide variety of real-estate secured residential loan products and services consisting of fixed-rate home loans, adjustable-rate home loans or 'ARMs', hybrid home loans, Option ARM loans and mortgage loans to higher risk borrowers through the subprime mortgage channel.  Such loans are either held in portfolio by the Home Loans Group, sold to secondary market participants or transferred through inter-segment sales to the Retail Banking Group." (p.38)

28.    On information and belief, Defendant WMB's loan officers, mortgage brokers and correspondent lenders broker and fund loans in collaboration with Defendant WMB, and in conformance with Defendant WMB's Discretionary Pricing Policy.

29.    Defendant WMB has established, implemented and continues to implement its Discretionary Pricing Policy, causing minority borrowers to pay subjective fees such as yield spread premiums and other mortgage-related finance charges at higher rates than similarly situated non-minority borrowers.  By its Discretionary Pricing Policy, Defendant WMB has intentionally discriminated against Plaintiffs and Class Members, systematically channeling Plaintiffs and other Class members into mortgage loans with less favorable conditions than those

given to similarly situated non-minority borrowers. This pattern of discrimination is not the result of random or non-discriminatory factors. Rather, it is a direct and intended result of Defendant WMB's business model and loan-funding practices.

30.     Defendant WMB's authorized loan officers, mortgage brokers and correspondent lenders receive part or all of their compensation from Defendant WMB based on the interest rate charged to the borrower. Defendant WMB's loan officers, authorized brokers and correspondent lenders receive more compensation from Defendant WMB when they steer their clients into Defendant WMB loans with higher interest rates, and less compensation when they place their clients into Defendant WMB loans with lower interest rates. These same incentives apply when Defendant WMB's loan officers, brokers and correspondent lenders place borrowers into loans which include prepayment penalties and other onerous conditions.

31.     Defendant WMB intentionally and actively implements its Discretionary Pricing Policy in a variety of ways, including actively educating loan officers and brokers about WMB's credit policies and procedures and directing its loan officers and brokers regarding the marketing of its loan products.

32.     Defendant WMB evaluates its loan officers, authorized brokers and correspondents to ensure that they comply with Defendant WMB's Discretionary Pricing Policy.  Because the Discretionary Pricing Policy is designed to discriminate, Defendant WMB has not taken precautions to ensure that application of the Policy will avoid discrimination against minorities.

33.     Defendant WMB's Discretionary Pricing Policy permits its loan officers, authorized mortgage brokers and correspondent lenders subjectively to charge minority loan applicants yield spread premiums and other discretionary charges, and indeed provides financial incentives for them to do so.

1    34.    This pattern and design of discrimination cannot be justified by

2  business necessity, and could be avoided through the use of alternative policies and

3  procedures that have less discriminatory impact and no less business efficacy.

4      **B.    DEFENDANT WMB'S DISCRETIONARY CREDIT PRICING**

5           **SYSTEM: DESIGNED TO DISCRIMINATE**

6    35.    Defendant WMB discriminates through its authorized mortgage

7  brokers.  Authorized mortgage brokers act as Defendant WMB's agents in

8  originating mortgage loans.  Authorized mortgage brokers enter into agreements

9  with Defendant WMB to accept loan applications on behalf of Defendant WMB;

10  communicate to loan applicants financing terms and rates set by Defendant WMB;

11  tell loan applicants about Defendant WMB's various financing options; and

12  ultimately originate mortgage loans funded by Defendant WMB using Defendant

13  WMB's forms and in accordance with Defendant WMB's policies and procedures.

14    36.    Likewise, Defendant WMB's authorized correspondent lenders and

15  loan officers, acting as Defendant WMB's agents, work with Defendant WMB to

16  make loans in accordance with Defendant WMB's credit policies and procedures.

17  Defendant WMB funds correspondent-generated loans before or shortly after they

18  go to closing.

19    37.    Defendant WMB then funds loans originated by its loan officers,

20  authorized mortgage brokers and correspondent lenders, sets the terms and

21  conditions of credit on those loans, and shoulders part or all of the risk on such

22  loans.  Defendant WMB actively and intentionally enforces its credit policies

23  through its authorized loan officers, mortgage brokers and correspondent lenders in

24  a variety of ways.  Among other things, Defendant WMB supplies its loan officers,

25  correspondent lenders and mortgage brokers with an array of loan-related forms

26  and agreements, including loan contracts, loan applications, and instructions on

27  completing loan applications and contracts.  And, as noted above, Defendant

28

**CLASS ACTION COMPLAINT**

WMB actively trains its authorized brokers to follow Defendant WMB's policies and procedures, and reinforces that training with marketing support.

38.    Once a loan applicant has provided credit information to Defendant WMB through a loan officer, mortgage broker or correspondent lender, Defendant WMB performs an initial objective credit analysis.  At that point, Defendant WMB evaluates numerous risk-related credit variables, including debt-to-income ratios, loan-to-value ratios, credit bureau histories, debt ratios, bankruptcies, automobile repossessions, prior foreclosures, payment histories, credit scores, and the like.

39.    Defendant WMB derives a risk-based financing rate from these objective factors, which Defendant WMB and others in the mortgage industry simply call the "par rate." (Defendant WMB's brokers and correspondent lenders can also estimate the par rates by referring to an applicant's credit bureau-determined credit score.)

40.    Although Defendant WMB's initial analysis applies objective criteria to calculate this risk-related interest rate, Defendant WMB's Discretionary Pricing Policy authorizes and provides incentives to its loan officers, brokers and correspondent lenders to mark up that rate later and also impose additional non-risk-based charges, including yield spread premiums and other discretionary fees. Defendant WMB regularly communicates applicable par rates, authorized yield spread premiums, and other discretionary fees to its loan officers, brokers and correspondent lenders via "rate sheets" and other communications.

41.    Defendant WMB gives its loan officers, authorized mortgage brokers and correspondent lenders discretion to impose yield spread premiums and other subjective fees on borrowers.  When borrowers pay yield spread premiums, Defendant WMB shares in additional income generated by the premium because the yield spread premium-affected borrower is locked into a higher interest rate going forward on their loan than they would be if they had been placed in a par rate loan without a yield spread premium.

1        42.    Defendant WMB's borrowers pay yield spread premiums and other

2   discretionary fees that inflate their finance charges not knowing that a portion of

3   their finance charges are non-risk-related.  Moreover, Defendant WMB's policies

4   make it more difficult for a borrower to get out of such an unfavorable loan, by

5   including substantial prepayment penalties.

6        43.    Defendant WMB's Discretionary Pricing Policy causes persons with

7   identical or similar credit scores to pay differing amounts for obtaining credit.

8   Such subjective loan pricing - which by design imposes differing finance charges

9   on persons with the same or similar credit profiles - disparately impacts Defendant

10  WMB's minority borrowers.

11       44.    While Defendant WMB's use of its Discretionary Pricing Policy for

12  all loan applicants might appear to be racially neutral, Defendant WMB's use of

13  yield spread premiums and other discretionary fees disproportionately and

14  adversely affects minorities (relative to similarly situated non-minorities).

15  Defendant WMB's Discretionary Pricing Policy causes minorities to pay

16  disparately more discretionary finance charges than similarly situated non-

17  minorities, and Defendant takes no precautions to avoid this result.  As the HMDA

18  data cited herein indicates, minorities, after controlling for credit risk, are

19  substantially more likely than similarly situated non-minorities to pay such

20  charges.

21       45.    Defendant WMB's credit policy is in fact intentionally discriminatory.

22  In an attempt to insulate itself from the discretionary decision-making, Defendant

23  WMB intentionally designed its subjective Discretionary Pricing Policy to allow

24  and encourage its agents to obtain greater profits from minority borrowers.  As

25  described above, Defendant WMB's Discretionary Pricing Policy by design

26  discriminates against minority borrowers and directly causes this disparate impact.

27  / / /

28  / / /

**CLASS ACTION COMPLAINT**

### III.    DEFENDANT WMB IMPOSED DISCRIMINATORY FEES ON PLAINTIFFS

46.    Defendant WMB's discriminatory credit pricing policy directly damaged Plaintiffs and the Class.

47.    On October 24, 2006, Plaintiff Burns refinanced and purchased a second mortgage on her home with financing from Defendant WMB.  Burns refinanced with a 40-year, adjustable-rate loan in the amount of $504,000, and received a second mortgage in the amount of $62,937.  The loan transaction was brokered by First Security Loan, one of Defendant WMB's authorized mortgage brokers.

48.    In connection with this transaction, Plaintiff Burns was charged $629.37, "a lender paid fee to broker" which upon information and belief is a yield spread premium.  In addition to other fees and a yield spread premium, Burns paid a discretionary "funding and review fee" to Defendant WMB in the amount of $530.  These discretionary fees were assessed pursuant to Defendant WMB's Discretionary Pricing Policy.

49.    Plaintiff Burns personally met with her broker First Security Loan and Defendant WMB knew that Plaintiff Burns was a minority borrower.

50.    On or about June 1, 2006, the Sanchez Plaintiffs purchased their home located in Lawndale, California.  The purchase price of the property was $785,000, and Plaintiffs put down a total of $90,000.  The balance of the funding was arranged through Equity Fund Group, another of Defendant WMB's authorized mortgage brokers.

51.    Equity Fund Group arranged for Sanchez to obtain the following financing from Defendant WMB:  (1) a 30-year, adjustable rate loan in the amount of $628,000 secured by a first Deed of Trust and bearing interest at the rate of 6.400% per annum; and (2) a 15-year, fixed rate loan in the amount of $78,500

CLASS ACTION COMPLAINT

secured by a Second Deed of Trust and bearing interest at the rate of 8.940% per annum.

52.    The HUD Settlement Statement and the Final Settlement Statement issued by the escrow agent reflect that Sanchez paid $16,416.33 in settlement charges in connection with the transaction.  Those charges include a $6,280 "loan origination fee" and a $495 "processing fee" paid to the mortgage broker, and a $430 "funding and review fee" and a $200 "PMT processing fee" paid to Defendant WMB.  *In addition*, Equity Fund Group charged Sanchez a yield spread premium of $4,710, paid outside of closing.  All of these fees were assessed pursuant to Defendant WMB's Discretionary Pricing Policy.

53.    Equity Fund Group and Defendant WMB knew that Plaintiffs were minority borrowers.  The real estate broker who introduced Sanchez to Equity Fund Group was a business partner of Sanchez, and the Equity Fund Group employee who brokered Plaintiffs' loan in conformance with Defendant WMB's discriminatory credit pricing policy was aware of Plaintiffs' Hispanic ethnicity when brokering Plaintiffs' loan.   The letter to Sanchez forwarding the Property Purchase Agreement and Escrow Instructions is written in Spanish and English.

54.    As a result of Defendant WMB's discriminatory conduct, Plaintiffs received a loan on worse terms with higher costs than similarly situated non-minority borrowers.

## CLASS ACTION ALLEGATIONS

55.    Plaintiffs repeat and re-allege each allegation above as if set forth herein in full.

56.    This class action is brought pursuant to the ECOA and the FHA by Plaintiffs on behalf of themselves and all minority borrowers who entered into residential mortgage loan contracts that were originated, financed or purchased by Defendant WMB, and who were harmed by Defendant's discriminatory conduct (the "Class").

- 14 -

1    57.    Plaintiffs sue on their own behalf, and on behalf of a class of persons

2    under Rule 23(a) and (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

3    58.    Plaintiffs do not know the exact size of the Class or identities of the

4    members of the Class, since that information is in the exclusive control of

5    Defendant WMB.  Plaintiffs believe that the Class includes many thousands, or

6    tens of thousands of individuals, who are geographically dispersed throughout the

7    United States. Therefore, the Class is so numerous that joinder of all members is

8    impracticable.

9    59.    All members of the Class have been subjected to and affected by

10   Defendant WMB's practice of assessing yield spread premiums and other

11   discretionary fees on mortgage loans. There are questions of law and fact that are

12   common to the Class, and that predominate over any questions affecting only

13   individual members of the Class. These questions include, but are not limited to the

14   following:

15   a.    the nature and scope of Defendant WMB's policies and

16          procedures concerning the assessment of yield spread premiums

17          and other discretionary fees on mortgage loans it funds;

18   b.    whether Defendant WMB is a creditor under the ECOA

19          because, in the ordinary course of business, it participates in the

20          decision of whether or not to extend credit to consumers;

21   c.    whether Defendant WMB's policies and procedures regarding

22          yield spread premiums and other discretionary fees are a

23          facially neutral credit pricing system that has effected racial

24          discrimination in violation of the ECOA;

25   d.    whether there are statistically significant disparities between the

26          amount of the discretionary charges imposed on minorities and

27          the amount of the discretionary charges imposed on Caucasians

28          that are unrelated to creditworthiness;

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       e.     whether Defendant WMB has any legitimate business justification for its policies and procedures.

       f.     whether there is a less discriminatory alternative to these policies and procedures;

       g.     whether the Court can enter declaratory and injunctive relief; and

       h.     the proper measure of disgorgement or monetary relief.

60.    Plaintiffs' claims are typical of the claims of the Class, and do not conflict with the interests of any other members of the Class, in that Plaintiffs and the other members of the Class were subjected to the same yield spread premiums and other discretionary fees that have disproportionately affected minority borrowers.

61.    Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs are committed to vigorous prosecution of the Class's claims, and have retained attorneys who have extensive experience in consumer protection and credit discrimination actions and in class actions.

62.    A class action is superior to other methods for the speedy and efficient adjudication of this controversy. A class action regarding the issues in this case does not create any problems of manageability.

63.    In the alternative, Defendant WMB has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

64.    The causes of action alleged herein accrued upon discovery of the discriminatory impact of Defendant WMB's Discretionary Pricing Policy. Plaintiffs and members of the Class did not discover and could not have discovered through the exercise of reasonable diligence the factual bases of those claims.

**CLASS ACTION COMPLAINT**

Indeed, the data forming the basis of Plaintiffs' claims was only recently released and analyzed in a comprehensive manner. Moreover, because Defendant WMB knowingly and actively concealed the facts alleged herein, Plaintiffs and the Class have been kept ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part.

65.    Despite the fact that Defendant WMB knew or should have known of the discriminatory effect of its Discretionary Pricing Policy, none of the loan documents inform the customer that its finance rates are subjective and not based solely on risk-related characteristics.

66.    Defendant WMB was and is under a continuous duty to disclose to the Plaintiffs and Class material information regarding their loans. The fact that certain loan terms are subjective and discretionary is information a reasonable borrower would consider important when deciding whether to purchase the loan and on what terms.  The fact that the subjective and discretionary components result in a disparate impact on minority borrowers is also information reasonable minority borrowers would consider important.

67.    Defendant WMB failed to disclose this information, however, and Plaintiffs and Class Members reasonably relied upon Defendant WMB's representation that terms of their loans would be based on their creditworthiness. Defendant WMB's financing documents falsely foster the image that Defendant WMB offers competitive rates that are objectively set. However, Defendant WMB never discloses to its credit applicants the fact that: (a) its credit rates are subjective and can vary significantly among persons with identical credit profiles; and (b) it has authorized and provided a financial incentive to mortgage brokers to subjectively increase the credit rate above the rate otherwise available to homeowners.

68.    Due to the inherent nature of Defendant WMB's undisclosed Discretionary Pricing Policy and due to Defendant WMB's deception and

CLASS ACTION COMPLAINT

1  concealment, Defendant WMB's minority customers have no way of knowing or

2  suspecting: (a) the existence of Defendant WMB's subjective credit pricing policy;

3  (b) that they were charged additional subjective credit charges; or (c) that they

4  were charged a disproportionately greater amount for their cost of credit than

5  similarly situated Caucasian persons.  Thus Defendant WMB is estopped from

6  relying on any statutes of limitation in its defense of this action.

7  ## COUNT I

8  ## VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT

9  ## (15 U.S.C. §§ 1691 - 1691f)

10  69.    Plaintiffs repeat and re-allege the allegations contained in paragraphs

11  1 through 68 above as if fully set forth herein.

12  70.    Defendant WMB engages in credit transactions through its offering,

13  granting, and purchasing of residential mortgage loans.

14  71.    By imposing higher interest rates and other discretionary fees on

15  residential mortgage loans to Plaintiffs and the Class than it imposed on non-

16  minority mortgage borrowers, Defendant WMB has discriminated against

17  Plaintiffs and members of the Class with respect to a credit transaction on the basis

18  of race in violation of the ECOA.  15 U.S.C. § 1691(a).

19  72.    In addition, Defendant WMB's pricing policies and procedures

20  (including yield spread premiums), which provide financial incentives to its loan

21  officers, mortgage brokers and correspondent lenders to make subjective decisions

22  to increase interest rates and charge additional fees and costs, have a disparate

23  impact on Plaintiffs and the Class.

24  73.    As a proximate result of Defendant WMB's violation of 15 U.S.C. §

25  1691, Plaintiffs and members of the Class have been injured and are entitled to

26  injunctive and declaratory relief and damages, or make whole equitable relief.

27  74.    In addition, Defendant WMB's conduct as alleged herein was

28  intentional, willful, wanton, reckless, malicious, outrageous, or otherwise

**CLASS ACTION COMPLAINT**

aggravated beyond mere negligence.  Defendant WMB acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

75.    Moreover, Defendant WMB continues to discriminate in violation of the ECOA against members of the Class every time Defendant WMB provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant WMB will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and the Class irreparable injury for which there is no adequate remedy at law.  15 U.S.C. § 1691(e).

76.    Plaintiffs and the Class ask this Court to declare the rights of the parties herein regarding Defendant WMB's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

## COUNT II

## VIOLATION OF THE FAIR HOUSING ACT (42 U.S.C. §§ 3601 – 3619)

77.    Plaintiffs repeat, re-allege and incorporate the allegations in paragraphs 1 through 76 above as if fully set forth herein.

78.    Mortgage lending and the providing of residential mortgage loans is a "residential real estate-related transaction" within the meaning of the FHA.  42 U.S.C. § 3605(b).

79.    By imposing higher interest rates and other discretionary fees and terms on residential mortgage loans to Plaintiffs and Class Members than it imposed on non-minority mortgage borrowers, Defendant WMB has discriminated against Plaintiffs and members of the Class concerning their ability to participate in real estate-related transactions, and in the terms and conditions of such transactions, in violation of the FHA.  42 U.S.C. § 3605(a).

80.    In addition, Defendant WMB's pricing policies and procedures (including yield spread premiums), which provide financial incentives to its mortgage brokers and correspondent lenders to make subjective decisions to increase interest rates and charge additional fees and costs, had a disparate impact upon Plaintiffs and Class Members.

81.    As a proximate result of Defendant WMB's violation of 42 U.S.C. § 3605, Plaintiffs and members of the Class have been injured and are entitled to injunctive and declaratory relief and damages, or make whole equitable relief.

82.    In addition, Defendant WMB's conduct as alleged herein was intentional, willful, wanton, reckless, malicious, outrageous, or otherwise aggravated beyond mere negligence.  Defendant WMB acted with malice and reckless indifference to the federally protected rights of Plaintiffs and members of the Class.  As a result, Plaintiffs and members of the Class are entitled to punitive damages.

83.    Moreover, Defendant WMB continues to discriminate in violation of the FHA against members of the Class every time Defendant WMB provides a home mortgage loan as described herein.  If not enjoined from such violation by the Court, Defendant WMB will continue to engage in conduct that disregards the rights of Plaintiffs and members of the Class, and cause Plaintiffs and members of the Class irreparable injury for which there is no adequate remedy at law.  42 U.S.C. § 3613(c).

84.    Plaintiffs and the Class ask this Court to declare the rights of the parties herein regarding Defendant WMB's obligation to participate in credit transactions without discriminating against applicants for credit on the basis of the applicants' race.

### REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

CLASS ACTION COMPLAINT

1    A.    An order determining that the action is a proper class action pursuant

2  to Rule 23 of the Federal Rules of Civil Procedure;

3    B.    A Judgment awarding Plaintiffs and the Class costs and disbursements

4  incurred in connection with this action, including reasonable attorneys' fees, expert

5  witness fees and other costs;

6    C.    A Judgment granting extraordinary equitable and/or injunctive relief

7  as permitted by law or equity, including rescission, restitution, reformation,

8  attaching, impounding, or imposing a constructive trust upon, or otherwise

9  restricting, the proceeds of Defendant WMB's ill-gotten funds to ensure that

10 Plaintiffs and the Class have an effective remedy;

11   D.    A Judgment awarding Plaintiffs and the Class compensatory damages

12 according to proof;

13   E.    A Judgment awarding punitive damages to Plaintiffs and the Class;

14   F.    A Judgment granting declaratory and injunctive relief and all relief

15 that flows from such injunctive and declaratory relief; and

16   G.    A Judgment or other Order granting such other and further relief as

17 the Court deems just and proper.

18 DATED this ℬ th day of February, 2008.

19                                          CHAVEZ & GERTLER, L.L.P.

20

21                          By: ⟨signature⟩

22                          Mark A. Chavez (SBN 90858)
                            Jonathan Gertler (SBN 111531)
23                          Nance F. Becker (SBN 99292)
24                          42 Miller Avenue
                            Mill Valley, California 94941
25                          Telephone: (415) 381-5599
26                          Facsimile: (415) 381-5572
                            mark@chavezgertler.com
27                          jon@chavezgertler.com
28                          nance@chavezgertler.com

-21-

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BONNETT, FAIRBOURN,
 FRIEDMAN, & BALINT, P.C.
Andrew S. Friedman (to seek *pro hac vice*)
Wendy J. Harrison (CA SBN 151090)
2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012
Telephone: (602) 274-1100
Facsimile:  (602) 274-1199
afriedman@bffb.com
wharrison@bffb.com

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
John J. Stoia, Jr. (CA SBN 141757)
Theodore J. Pintar (CA SBN 131372)
Leslie Hurst (CA SBN 178432)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:(619) 231-1058
Facsimile:  (619) 231-7423
johns@csgrr.com
tedp@csgrr.com
leslieh@csgrr.com

Attorneys for Plaintiffs

CLASS ACTION COMPLAINT

1

**JURY TRIAL DEMANDED**

2

Plaintiffs demand a trial by jury on all issues so triable.

3

DATED this **13th** day of February, 2008.

4

CHAVEZ & GERTLER, L.L.P.

5

6

By: _____

7

Mark A. Chavez (SBN 90858)
Jonathan Gertler (SBN 111531)

8

Nance F. Becker (SBN 99292)

9

42 Miller Avenue
Mill Valley, California 94941

10

Telephone: (415) 381-5599

11

Facsimile: (415) 381-5572
mark@chavezgertler.com

12

jon@chavezgertler.com
nance@chavezgertler.com

13

14

BONNETT, FAIRBOURN,

15

FRIEDMAN, & BALINT, P.C.
Andrew S. Friedman (to seek *pro hac vice*)

16

Wendy J. Harrison (CA SBN 151090)

17

2901 North Central Avenue, Suite 1000
Phoenix, Arizona 85012

18

Telephone: (602) 274-1100

19

Facsimile: (602) 274-1199
afriedman@bffb.com

20

wharrison@bffb.com

21

22

23

24

25

26

27

28

- 23 -

CLASS ACTION COMPLAINT

COUGHLIN STOIA GELLER RUDMAN
 & ROBBINS LLP
John J. Stoia, Jr. (CA SBN 141757)
Theodore J. Pintar (CA SBN 131372)
Leslie Hurst (CA SBN 178432)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone:(619) 231-1058
Facsimile:  (619) 231-7423
johns@csgrr.com
tedp@csgrr.com
leslieh@csgrr.com

Attorneys for Plaintiffs

**CLASS ACTION COMPLAINT**

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA E-filing

MARA Y. BURNS; RODOLFO SANCHEZ and M.
CARMEN SANCHEZ

**v.**

WASHINGTON MUTUAL BANK

### SUMMONS IN A CIVIL CASE

CASE NUMBER:

*EMC*

*CV 08*

*0919*

TO: (Name and address of defendant)

WASHINGTON MUTUAL BANK
1201 Third Ave.
Seattle, WA 98101

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Mark A. Chavez
Jonathan Gertler
Nance F. Becker
Chavez & Gertler, LLP
42 Miller Avenue
Mill Valley, California 94941

an answer to the complaint which is herewith served upon you, within  20   days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

(BY) DEPUTY CLERK

DATE February 13, 2008

## RETURN OF SERVICE

|  | DATE |
|---|---|
| Service of the Summons and Complaint was made by me [1] | |

| Name of SERVER | TITLE |
|---|---|
| | |

| *Check one box below to indicate appropriate method of service* |
|---|

☐     Served Personally upon the Defendant. Place where served:

☐     Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left:

☐     Returned unexecuted:

☐     Other *(specify):*

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    _____      _____
                  *Date*                                         *Signature of Server*

                                                    _____
                                                    *Address of Server*

(1)    As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Mara Y. Burns; Rodolfo Sanchez and M. Carmen Sanchez

## DEFENDANTS

Washington Mutual Bank

**(b)** County of Residence of First Listed Plaintiff  Alameda
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Chavez & Gertler, LLP
42 Miller Avenue
Mill Valley, California 94941
(415) 381-5599

Attorneys (If Known)

E-filing

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                        and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities– Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities– Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Equal Employment Opportunity Act, 15 U.S.C. § 1691 and Fair Housing Act, 42 U.S.C. § 3601

Brief description of cause:
Racial discriminatory lending practices

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND     ☐ SAN JOSE

DATE
2/13/08

SIGNATURE OF ATTORNEY OF RECORD

COPY

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII.     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.